**Zilpha SALMON, Plaintiff,**

v.

**DADE COUNTY SCHOOL BOARD, Defendant.**

**No. 96–2711–CIV.**

United States District Court, S.D. Florida.

April 28, 1998.

Heidi Shulman–Pereira, Patricia D. Bass, School Board of Miami–Dade County, Miami, FL, for Plaintiff.

Alexander O. Akpodiete, Miami, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

Zilpha Salmon, a guidance counselor at Eneida M. Hartner Elementary School, filed this action against the Dade County School Board pursuant to section 12112 of the Americans with Disabilities Act, 42 U.S.C. sections 12101 *et seq.*, and the Florida Civil Rights Act, section 760.01, Fla. Stat., alleging that the defendant failed to provide a reasonable accommodation for her disability and, on the basis of her disability, denied her an equal chance for promotion. The School Board asks this Court to enter summary judgment based on the plaintiff's failure to set forth specific facts showing there is a genuine issue for trial.

### I. FACTS

Salmon was hired by the School Board as a guidance counselor in March of 1989. She is the only guidance counselor at the Eneida Hartner Elementary School which has over one-thousand low-income, socially and emotionally deprived students, ranging in age from five to eleven years old. Guidance counselors provide group and private counseling sessions to address students' academic and emotional problems. Counselors and teachers are required to report to school by 8:15 a.m. and remain at school during scheduled working hours, which conclude at 3:20 p.m.

Salmon suffers from a back condition—a permanent partial disability of chronic lum-

bosacral strain. Because of this back problem, she is unable to sit or stand for long periods of time and cannot climb stairs. After driving her car for long periods of time, Salmon needs to stretch and rest her back. For a period of time between 1994 through 1996, Salmon left work early approximately three times a week to receive physical therapy. She also took extended leaves of absence and was absent from work for personal reasons. Salmon was frequently tardy and her arrival times were unpredictable.

To accommodate Salmon's disability, the school principal provided her with a special chair and moved her counseling sessions from the second floor to the first so that she would not have to climb stairs. Teachers were instructed to walk their students to Salmon's office so that Salmon would not have to walk long distances to meet the students. Salmon complained that driving in the heavy morning traffic exacerbated her back problems and asked that she be permitted to arrive at work five to twenty-five minutes late on a regular basis in order to stretch and rest her back after the car ride. The principal denied this request, telling Salmon that as the only guidance counselor in a school of 1,200 students she needed to arrive at school on a regular and punctual basis in order to serve the needs of the children. No substitute counselors are available for an absent or late counselors. Salmon was told that the need for regular and punctual counseling services was essential because the counselor must address problems that occur on an emergency basis, as well as regularly-scheduled matters. The principal suggested that Salmon leave home a little earlier to avoid the heavy traffic and to give herself time to stretch and rest her back.

Plaintiff's arrival times at school continued to be irregular and late. The principal repeatedly directed her to report to work by 8:15 a.m., but plaintiff failed to comply with these directives. In April 1996, Salmon was evaluated and placed on "prescription," a program designed to remediate and eliminate specific performance problems, here unpredictable and tardy arrival times. According to School Board regulations, an individual on prescription may not be considered for promotion. Salmon complied with the prescription requirements and began arriving at school regularly and punctually. As a result, she was removed from the prescription program. Once removed from the prescription program, plaintiff continued to arrive at school on a timely basis.

Salmon filed this lawsuit against the School Board alleging that it discriminated against her on the basis of her disability by refusing to grant her a reasonable accommodation by allowing her to arrive late or transferring her to another school closer to her home. Salmon argues that because of her disability, she was denied equal chances for promotion.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations will not suffice to create a genuine issue. There must be more than a "scintilla or evidence" and more than "some metaphysical doubt as to the material facts." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990)(quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Tyson Foods, Inc.,* 121 F.3d at 646.

## III. LEGAL ANALYSIS

Section 12112 of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* prohibits workplace discrimination against a qualified individual with a disability because of the individual's disability. In demonstrating a viable claim under the ADA[1], a plaintiff must demonstrate three elements: (1) that she has a disability; (2) that with or without reasonable accommodations she can perform the essential functions of her job; and (3) that she was discriminated against because of her disability. *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998); *Gore v. GTE South, Inc.,* 917 F.Supp. 1564, 1571 (M.D.Ala.1996); *Sawinski v. Bill Currie Ford, Inc.,* 881 F.Supp. 1571 (M.D.Fla.1995). In this case for the purposes of summary judgment, the defendant concedes that the first two elements have been met; plaintiff worked for a covered entity and is disabled within the meaning of the Act. Defendant contends, however, that the plaintiff is not a "qualified individual with a disability." According to the defendant, the uncontroverted evidence shows that arriving to work on time is an essential element of Salmon's job and that under the circumstances, the School Board had no duty to accommodate her request to come in late. Defendant further argues that Salmon has presented absolutely no evidence in support of her claim that she was discriminated against on the basis of her disability.

An employee with a disability must be qualified for a job in order to be entitled to the non-discrimination protections guaranteed by the ADA and the FCRA. Pursuant to 42 U.S.C. § 12111(8), a qualified individual entitled to statutory protection is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions and job requirements of the position that the individual holds. *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)(the employee must be "able to met all of a program's requirements in spite of his handicap"); 29 C.F.R. § 1630.2(m). Therefore, the initial inquiry before this Court is whether Salmon was capable of performing the essential functions of her job. If the Court finds that Salmon was unable to perform the essential functions of her job, the Court must then determine whether the plaintiff has demonstrated a genuine issue of material fact regarding her ability to perform those functions with any reasonable accommodation. *Tyndall v. National Education Centers, Inc.,* 31 F.3d 209 (4th Cir.1994). For in determining whether a disabled individual is otherwise qualified, the court must take a two-step approach. It must first determine whether the individual is capable of performing the essential functions of her job. If so, then she is otherwise qualified. If not, then the court must determining whether any reasonable accommodation by the employer would have enabled the employee to perform those functions. *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995); *Jackson v. Veterans Admin.,* 22 F.3d 277, 281 (11th Cir.1994).

### A. Essential Job Functions.

According to the School Board, Salmon was not a qualified individual with a disability because (1) she cannot perform the essential functions of her job without accommodation, and (2) she has not shown that there is a reasonable accommodation that would allow her to perform these essential functions. The term "essential functions" is

---

1. The Florida Civil Rights Act of 1992 is Florida's counterpart to the ADA, located at Chapter 760, Fla. Stat.

defined as the fundamental job duties of a position that an individual with a disability is actually required to perform. 29 C.F.R. § 1630.2(n)(1). For example, a job function may be considered essential because the reason the position exists is to perform that function. 29 C.F.R. § 1630.2(n)(2)(i). Likewise, a job function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed. 29 C.F.R. § 1630.2(n)(2)(ii). Regardless, the ADA specifically provides that "consideration shall be given to the employer's judgment as to what functions of the job are essential." 42 U.S.C. § 12111(8); *See also* 29 C.F.R. § 1630.2(n)(3) (evidence of whether a particular function is essential includes the employer's judgment as to which functions are essential and the consequences of not requiring the incumbent to perform the function). As a guidance counselor for the School Board, Salmon was required to provide counseling services to students addressing both academic and emotional problems, to complete special projects with the students, and to maintain appropriate records of the counseling services provided. The defendant presented evidence, which was not contradicted by plaintiff, that as a matter of established practice and necessity, a counselor at Eneida Hartner Elementary School, is required to report to school by 8:15 a.m. and remain at school during scheduled working hours, which conclude at 3:20 p.m.

Unlike other jobs that can be performed off site or deferred until a later day, a guidance counselor counsel must counsel students at the school during the hours in which the children are in attendance. *See Jackson*, 22 F.3d at 281. Defendant presented affidavits showing that regular and punctual attendance is an essential requirement for a counselor in the Eneida M. Hartner elementary school which has a student population of approximately one thousand two hundred students but is assigned only one guidance counselor. When a guidance counselor is absent or tardy, no substitute is available so counseling services are simply not provided.

Another reason for regular and punctual counseling services is that the counselor must be available to address problems of an emergency nature. The defendant's position, supported by affidavits, that coming to work on time is an essential element of a guidance counselor's job, has not been disputed by the plaintiff. Salmon has presented absolutely no evidence suggesting, nor has she even argued, that being at work during scheduled hours is not an essential function of her job.[2] As such, the Court must accept the defendant's unrebutted claim that arriving promptly for work is a necessary part of Salmon's position and that plaintiff was unable to meet this essential requirement.

Thus, as the first step in this two-step process, the Court has determined that Salmon is incapable of performing an essential element of her job and therefore plaintiff has failed to demonstrate that she is an "otherwise qualified" individual. As the second step, the Court must determine whether any reasonable accommodation by the employer would enable Salmon to perform her job functions.

**B. Reasonable Accommodation.**

When an individual is not able to perform the essential functions of the job, the court must consider whether any reasonable accommodation by the employer would enable the employee to perform those functions. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Reasonable accommodation includes modifications or adjustments to the work environment or the manner in which the position is customarily performed to enable an individual with a disability to perform the essential functions of that position. *Id.;* 29 C.F.R. § 1630.2(*o*)(1). Reasonable accommodation may include a change in work schedule. *Jackson*, 22 F.3d at 279.

Under the ADA, an employer is not required to accommodate an employee if the accommodation would require significant difficulty or expense on the part of the employ-

---

**2.** In fact, in response to defendant's motion for summary judgment the only evidence submitted by the plaintiff was her own affidavit which merely reiterated the conclusory statements made in her complaint.

er, where it would impose undue financial and administrative burdens, or where it would require a fundamental alteration in the nature of the program. 42 U.S.C. § 12111(10)(A) and (B). Additionally, the duty to accommodate does not require an employer to lower its performance standards, reallocate essential job functions, create new jobs, or reassign disabled employees to positions that are already occupied. 29 C.F.R. § 1630.2(*o*)(2); *See also* 42 U.S.C. § 12111(9). Such accommodations are precluded on the theory that they impose an undue burden or hardship on the operations of the employer's business. 29 C.F.R. § 1630.2(p); 42 U.S.C. § 12111(10)(A). Pursuant to the Interpretative Guide to the ADA regulations, an employer does not have to choose the best accommodation available or the accommodation that the employee prefers. 29 C.F.R. § 1630.9, App.; *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 947 (N.D.Ga.1995). Instead, the employer has the "ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. § 1630.9, App.

Plaintiff bears the burden to identify an accommodation that would have allowed her to perform her job. She must also demonstrate that such an accommodation is reasonable. *Willis v. Conopco, Inc.*, 108 F.Supp. 282, 283 (11th Cir.1997). Here Salmon argues that the School Board had a duty to allow her to come to work late in order to accommodate her disability. Defendant contends that it had no such duty because coming into work on time was an essential element of the job in light of Salmon's duties as the sole school guidance counselor, which required her to be available to children for routine and emergency counseling during regular school hours. An employer has no duty to accommodate an employee if the accommodation would necessarily eliminate an essential function of her job. *Tuck v. HCA Health Servs. of Tennessee, Inc.*, 7 F.3d 465, 472 (6th Cir.1993); *Bradley v. Universi-*

*ty of Texas M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 925 (5th Cir.1993). Other federal courts have addressed the issue of the circumstances under which an employer has the duty to change an employee's work schedule in order to reasonably accommodate an employee's disability. In *Guice–Mills v. Derwinski*, 772 F.Supp. 188 (S.D.N.Y.1991), a nurse brought an action for handicap discrimination because of a hospital's failure to accommodate her disability. The disability caused her to have frequent absences and tardy arrival times. The nurse asked her employer to accommodate her disability by allowing her to start work at 10 a.m. rather than 7 a.m. The court dismissed the nurse's complaint on a holding that the employer was not obligated to accommodate the plaintiff's request because under the circumstances the accommodation was not reasonable. Accommodation was not reasonable because it was essential for the nurse to be present at the hospital at 8:00 a.m., her scheduled work time, because if she was not present from 8:00 to 10:00 a.m., no other qualified person would be on duty and the responsibilities of the position would go undone. *Id.* at 195, 198–199.[3]

Summary judgment was entered in favor of the employer in *Tyndall v. National Educ. Ctrs., Inc.*, 31 F.3d 209 (4th Cir.1994), on a finding that the employer was not required to accommodate the employee by changing her work schedule. The *Tyndall* court held that a business college professor, with "good" and "excellent" evaluations, who was unable to teach assigned courses during scheduled class times, was not a qualified individual with a disability entitled to protection under the ADA. As a professor, Tyndall was required her to teach assigned courses during the scheduled class times and to spend time with her students. *Id.* at 213. The university was not required to accommodate the professor by restructuring her work schedule. *Id.*

The Court finds that where, as here, an accommodation would eliminate an essential

---

**3.** In support of its decision, the court cited to the "[d]ifficulties encountered by plaintiff's absence prior to 10:00 a.m.: staffing problems had to be handled by an assistant with other responsibilities; meetings held prior to 10:00 a.m. were missed; [the] night supervisor's patient care activities could not be reviewed with plaintiff . . .and handling of other problems with other services . . .went unattended." *Guice–Mills*, 772 F.Supp. at 195.

function of the employee's job, there is no duty to make the accommodation. As the *Guice–Mills* and *Tyndall* courts noted, the employer has the right to set employees' work schedules and if prompt attendance is a fundamental prerequisite for the job, the employer is not required to accommodate an employee's disability by changing her work schedule. Significantly, in this case, as in *Guice–Mills*, there is no genuine issue of material fact that an essential element of Salmon's job would be eliminated if she were allowed to start later. The undisputed facts show that Salmon was the only guidance counselor at the school and no substitute counselor was available to fill in for her when she was late. If she were not there, no person would be available to counsel the children in times of emergency. Under these circumstances, permitting the employee to come in late to work is not a reasonable accommodation.

█ Plaintiff also claims that the School Board failed to accommodate her disability by transferring her to a school which afforded her a shorter commute. But plaintiff's commute to and from work is an activity that is unrelated to and outside of her job. While an employer is required to provide reasonable accommodations that eliminate barriers *in* the work environment, an employer is not required to eliminate those barriers which exist *outside* the work environment. *Schneider v. Continental Cas.Co.*, 1996 U.S. Dist. LEXIS 19631, at 24 (N.D.Ill.Dec. 16, 1996) (employer was not required to accommodate an employee's back injury by eliminating the employee's commute to work); *Chandler v. Underwriters Labs., Inc.*, 850 F.Supp. 728, 736 (N.D.Ill.1994) (employee's inability to tolerate lengthy commute due to back injury was not a disability under an employee benefit plan but rather a limitation within the control of the employee); *Lewis*, 908 F.Supp. at 947 (employers are entitled to assign personnel as their needs dictate. Accordingly forced transfers are not reasonable accommodations as a matter of law.); *See also* 29 C.F.R. § 1630.9, App.

## C. Discrimination based on disability.

█ Where an employer disclaims any reliance on the employee's disability in making an employment decision which affects the disabled employee, the burden shifting approach applied in Title VII cases is applicable. *See generally, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff has the initial burden of proof and must present a *prima facie* case of discrimination. Thereafter, the burden shifts to the defendant to show a legitimate non-discriminatory reason for the actions it took. *Burdine*, 450 U.S. at 252, 101 S.Ct. 1089; *Lucero v. Hart*, 915 F.2d 1367, 1371 (9th Cir.1990). In this case, if the plaintiff had presented a *prima facie* case, the School Board would have been required to articulate why its employment actions were for reasons other than plaintiff's disability. Plaintiff would maintain the burden of persuasion and must prove, by a preponderance of the evidence, that the reasons proffered by the School Board are pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 801, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252, 101 S.Ct. 1089.

Although Salmon has had adequate time to conduct discovery, she has presented no evidence whatsoever that the School Board discriminated against her on the basis of her disability. She failed to rebut the School Board's claim that arriving to school on time is an essential element of a counselor's responsibilities at Eneida Hartner Elementary School. Salmon contends that she was subjected to disciplinary action and was denied promotional opportunities because of her disability, but she presents no facts in support of these allegations. The complaint alleges that nondisabled school employees were allowed to come into work late, but it alleges no specific facts in support of this claim. The complaint also alleges that the School Board denied her promotions because of her disability. Yet the undisputed evidence shows that employees in a prescriptive status are not permitted to seek promotional opportunities until the prescription is completed. Once Salmon demonstrated regular and punctual attendance, she was removed from her prescriptive status and was allowed to apply for promotional opportunities. But ap-

parently Salmon failed to do so as there is no allegation or evidence that she ever applied for a promotion. Based on the preceding analysis, because Salmon's unsupported conclusions are insufficiently probative of pretext or causation, she is unable to demonstrate that the School Board's actions in this case were anything other than legitimate and non-discriminatory.

## IV. CONCLUSION

Conclusory allegations, opinions, and mere reliance on the allegations made in a complaint are insufficient, without more, to discharge the burden placed upon plaintiff and thus defeat a motion for summary judgment. *Gore v. GTE South, Inc.*, 917 F.Supp. 1564 (M.D.Ala.1996); *Clay v. Interstate Nat. Corp.*, 900 F.Supp. 981, 988 (N.D.Ill.1995); *Robinson v. AFA Serv.Corp.*, 870 F.Supp. 1077, 1084 (N.D.Ga.1994); *Mack v. W.R. Grace Co.*, 578 F.Supp. 626, 631 (N.D.Ga. 1983). The Supreme Court has explained that the trial court's function at this juncture is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986). The nonmoving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; see also Fed.R.Civ.P. 56(e). Clearly Salmon has failed to meet this burden because there is a complete failure of proof concerning the essential elements of

her claim. In response to the School Board's motion for summary judgment, the plaintiff submitted only one affidavit; it was the plaintiff's own affidavit and it merely recited the conclusory allegations set forth in the complaint. Because there is no genuine issue of material fact for trial, the Court enters summary judgment in favor of the School Board on plaintiff's claims under 42 U.S.C. section 12112 and the Florida Civil Rights Act of 1992. *See Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir.1998)(where reservations agent argued that airline had duty under the ADA to give her a part-time position as a reasonable accommodation, summary judgment for airline was appropriate because plaintiff failed to produce sufficient evidence showing that other reservations agents were allowed to work part-time shifts). The clerk of court is directed to close this case.