Betty RAVEL, Plaintiff,

v.

HEWLETT–PACKARD ENTERPRISE, INC., a Delaware corporation, and Does 1 through 100, inclusive, Defendant.

CIV. NO. 2:16–cv–2610 WBS DB

United States District Court, E.D. California.

Signed January 11, 2017

David Jay Graulich, Law Practice of David Graulich, Esq., Fair Oaks, CA, for Plaintiff.

Benjamin A. Emmert, Littler Mendelson, P.C., San Jose, CA, for Defendant.

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

### WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE

Plaintiff Betty Ravel filed this action against defendant Hewlett–Packard Enterprise, alleging that defendant discriminated against her on the basis of her disability in violation of the American with Disabilities Act ("ADA") and the California Fair Employment and Housing Act ("FEHA"). (Notice of Removal Ex. A, First Am. Compl. ("FAC") (Docket No. 1).) Before the court is defendant's Motion to Dismiss plaintiff's Complaint. (Def.'s Mot. (Docket No. 4).)

## I. Factual and Procedural Background

Plaintiff began working for defendant, a computer technology company, in 2010. (FAC ¶¶ 2, 12.) In March 2015, she was promoted to Sales Administration Manager, a position that involves managing teams of Executive Assistants "located all over the U.S. and internationally." (Id. ¶¶ 15–16.) According to plaintiff, she would "manage[ ] her team on a virtual basis from her home office [in Folsom, CA], using Skype, e-mail and collaborative software," "with occasional trips to the company's [office] in Roseville, CA." (Id.)

Plaintiff alleges that in May 2015, she "began experiencing shooting pains in her left leg." (Id. ¶ 18.) Her doctor diagnosed her with sciatica and a herniated and two bulging spine discs. (Id. ¶ 19.) After the diagnosis, plaintiff "attempted to work a few days in Roseville," which she alleges is a one hour commute from her home. (Id. ¶ 22.) Plaintiff alleges that "[a]fter the third day of commuting to Roseville," the pain in her left leg became "excruciating." (Id.) As a result, she "resumed working at home." (Id. ¶ 23.)

"In March 2016, plaintiff attempted to resume work on-site in Roseville. After three days, the severe pain returned—this time in both legs." (Id. ¶ 28.) The one-hour commute to Roseville, according to plaintiff, was interfering with her acupuncturist's "orders [to] ... alternate[ ] sitting, standing and lying down in ... 30–minute rotation[s]," and thus "exacerbat[ing] her herniated and bulging discs" and putting her at risk for "irreparable spinal damage." (Id. ¶ 29.)

In April 2016, plaintiff requested that defendant allow her to work exclusively from home going forward. (See id. ¶ 30.) Defendant denied her request in July 2016 and told her that it could "accommodate [her medical] restrictions in the [Roseville] office." (Id. ¶ 34.) Plaintiff then requested that defendant transfer her to its Folsom office, which she alleges "is only fifteen minutes from her home." (Id. ¶ 37.) Defendant denied that request as well. (Id. ¶ 38.)

On July 22, 2016, plaintiff went on paid disability leave. (Id. ¶ 45.) She was paid 100% of her regular salary until September 2016, at which time her pay was reduced to 70%. (Id. ¶ 44.) Plaintiff alleges

that during the time she has been on leave, she has been "ready, willing and able to work from her home." (Id. ¶ 45.)

Plaintiff filed this action in the California Superior Court on September 21, 2016. (Notice of Removal at 1.) She asserts the following causes of action against defendant: (1) disability discrimination in violation of the ADA, 42 U.S.C. §§ 12101 et seq., and FEHA, Cal. Gov. Code § 12940; (2) failure to engage in an interactive process in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A), and FEHA, Cal. Gov. Code § 12940(n); (3) failure to provide reasonable accommodation in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A), and FEHA, Cal. Gov. Code § 12940(m); (4) failure to prevent discrimination and harassment in violation of FEHA, Cal. Gov. Code § 12940(k); (5) age discrimination in violation of FEHA, Cal. Gov. Code § 12940(a); and (6) intentional infliction of emotional distress. (FAC at 10–13.)

Defendant removed plaintiff's action to this court on November 1, 2016. (Notice of Removal.) Defendant now moves to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot.)

## II. Legal Standard

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The "plausibility" standard, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," the facts "stop[ ] short of the line between possibility and plausibility." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions...." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

## III. Discussion

### A. Disability Discrimination and Reasonable Accommodation

Plaintiff's first cause of action alleges that defendant discriminated against her on account of her disability. (FAC at 10.) Her third cause of action alleges that defendant failed to provide her a reasonable accommodation. (Id. at 12.) Each claim is brought under both the ADA and FEHA.

■ The ADA and FEHA each provide protections to disabled employees. See 42 U.S.C. § 12112(a); Cal. Gov't Code § 12940. While courts in this circuit have often analyzed claims brought under the ADA and FEHA together, see, e.g., Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1140 (9th Cir. 2001) ("We analyze [plaintiff's] state and federal disability claims together...."), they have also not-

ed that "in a number of instances[,] FEHA's anti-discrimination provisions provide even greater protection to employees than does the ADA," Diaz v. Fed. Express Corp., 373 F.Supp.2d 1034, 1053 (C.D. Cal. 2005). Because FEHA provides greater protection than the ADA in some instances, "a judgment for a defendant as to an ADA claim will not necessarily lead to a similar judgment with respect to a FEHA claim." Cripe v. City of San Jose, 261 F.3d 877, 895 (9th Cir. 2001).

A key issue raised in plaintiff's ADA and FEHA claims is whether defendant satisfied its obligation to provide her a lawful accommodation by placing her on paid disability leave, instead of allowing her to work from her home or at its Folsom office. Because the ADA and FEHA differ with respect to this question, the court will address plaintiff's disability discrimination and reasonable accommodation claims under the two legislations separately.

1. Disability Discrimination and Reasonable Accommodation Under the ADA

■ "The ADA prohibits an employer from discriminating against a qualified individual with a disability 'because of the disability.'" Nunes v. Wal–Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). To state a prima facie claim of disability discrimination under the ADA, plaintiff must allege facts that plausibly show: "(1) [she] is a disabled person within the meaning of the [ADA]; (2) [she] is a qualified individual with a disability; and (3) [she] suffered an adverse employment action because of [her] disability." Hutton v. Elf Atochem N. Am., Inc., 273 F.3d 884, 891 (9th Cir. 2001).

■ With respect to the first prong, the ADA defines a "disabled person" as an individual who has "a physical or mental impairment that substantially limits one or more of the individual's major life activities." Coons v. Sec'y U.S. Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004). "An impairment covered under the ADA includes any physiological disorder," id. and "major life activities" includes "standing," "sitting," and "lifting," 29 C.F.R. § 1630.2. "Substantially limited" means that a person is "significantly restricted as to condition, manner or duration under which [she] can perform [the] particular major life activity as compared to … [an] average person in the general population." Coons, 383 F.3d at 885. "Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." Wilmarth v. City of Santa Rosa, 945 F.Supp. 1271, 1276 (N.D. Cal. 1996)

Defendant's only challenge with respect to the first prong is that plaintiff cannot base her argument for "disabled person" status on mere "recommendations" from her physician alone. (Def.'s Mot. at 15.) That argument fails because plaintiff alleges that her acupuncturist's advice that she not sit or stand for more than thirty minutes was in fact a "strict order[]." (FAC ¶ 29.)

Plaintiff alleges that her sciatica and disc condition prevent her from sitting or standing for more than thirty minutes, or lifting anything "more than ten pounds." (See FAC ¶ 29.) While she indicates that her condition would improve over time "with proper treatment and care," (id. ¶ 36), she also alleges that the effects of the condition and her need for accommodation are "permanent," (id. ¶¶ 32, 36). Drawing reasonable inferences in plaintiff's favor, the court finds that these allegations are sufficient to plausibly suggest that plaintiff is a "disabled person" within the meaning of the ADA.

With respect to the second prong, the ADA defines "qualified individuals" as

those "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). Plaintiff, who has been employed in her current position since March 2015, (FAC ¶ 15), alleges that since being diagnosed with back problems, she has been able to work from home without "miss[ing] a beat," and that she is "ready, willing and able" to continue working if allowed to work from home or at defendant's Folsom office, (FAC ¶¶ 27, 30, 37). Defendant did not dispute the "qualified" prong in its Motion. Thus, the court finds that plaintiff has plausibly alleged that she is a "qualified individual" under the ADA.

With respect to the third prong, defendant notes that the only adverse employment action plaintiff claims she was subject to was defendant's decision to deny her request to work from home or at Folsom. (Def.'s Mot. at 11.) Defendant argues that its decision to deny her request does not constitute an adverse employment action because it offered her two "reasonable" alternatives to what she requested: (1) working at defendant's Roseville office with leave to lie down in the conference room as needed, and (2) taking a paid leave of absence to recover from her back condition. (See id.; FAC ¶¶ 42, 45.)

■ Defendant correctly notes that under the ADA, "[a]n employer is not obligated to provide an employee the accommodation [she] requests or prefers, the employer need only provide some reasonable accommodation." Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) (citing E.E.O.C. v. Yellow Freight Sys. Inc., 253 F.3d 943, 951 (7th

Cir. 2001)). Defendant's denial of plaintiff's requested accommodations, therefore, is not an "adverse employment action" within the meaning of the ADA if either of the alternatives it offered her is a "reasonable accommodation." [1]

The ADA does not define the term "reasonable accommodation" with much precision. See 42 U.S.C. § 12111(9). The Equal Employment Opportunity Commission, however, has promulgated regulations that define "reasonable accommodation" to include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The Ninth Circuit has similarly held that a "reasonable accommodation must be effective, in enabling the employee to perform the duties of [her] position." Humphrey, 239 F.3d at 1137.

The first alternative offered by defendant—working at its Roseville office with permission to lie down in the conference room as needed—does not "enabl[e plaintiff] to perform the duties of [her] position" because it does not address plaintiff's alleged inability to commute to Roseville. (See FAC ¶¶ 29, 36 (noting that hour-long commute to Roseville was "exacerbate[ing]" back condition).) Defendant argues that the ADA does not require employers to accommodate employees' commutes because commutes are not considered part of their job duties. (See Def.'s Mot. at 10–11.) The Ninth Circuit has held, however, that an employer has an obligation "to accommodate an employ-

---

1. Conversely, if neither alternative offered by defendant is "reasonable," defendant's denial of plaintiff's request would constitute an "adverse employment action." See Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1232 (9th

Cir. 2003) ("On the face of the ADA, failure to provide reasonable accommodation to an otherwise qualified individual with a disability constitutes [disability] discrimination.").

ee's limitations in getting to and from work" under the ADA.[2] Livingston v. Fred Meyer Stores, Inc., 388 Fed.Appx. 738, 740 (9th Cir. 2010); see also Humphrey, 239 F.3d at 1135 (holding that employer had obligation to accommodate employee's inability to get to work on time or at all due to obsessive compulsive disorder). In light of this holding and in light of plaintiff's alleged inability to commute to the Roseville office, defendant's offer to have plaintiff continue working at the Roseville office does not constitute a reasonable accommodation. See Humphrey, 239 F.3d at 1137.

■ Defendant's second alternative, however, has been recognized by the Ninth Circuit to be "reasonable." In Humphrey, the Ninth Circuit held that a "leave of absence for medical treatment may be a reasonable accommodation under the ADA" where it would "permit [an employee], upon [her] return, to perform the essential functions of [her] job." Humphrey, 239 F.3d at 1135–36. Leave need not be paid to be reasonable under the ADA. Nunes, 164 F.3d at 1247 ("Unpaid medical leave may be a reasonable accommodation under the ADA."); Dark v. Curry Cty., 451 F.3d 1078, 1090 (9th Cir. 2006) (same).

Plaintiff alleges that she "has been on full disability [leave] as of July 22, 2016" and paid at least 70% of her monthly salary since then. (FAC ¶¶ 44–45.) She indicates that her back problems, while "permanent" and requiring "ongoing care," (id. ¶¶ 32, 36), would improve over time as she remained on leave, (id. ¶ 36 (noting that plaintiff was making "progress" when not being forced to commute to Roseville)). In discussing the negative effects that plaintiff's Roseville commute was having on her back, plaintiff's acupuncturist recommended that plaintiff "work from home for a period of no less than 3 months" so that she could recover, (id. ¶ 36), which suggests that after that period, plaintiff would be able to resume working at Roseville. Because these allegations suggest that a disability leave would allow plaintiff to gain at least a partial recovery and, after a period of a few months, resume working at Roseville, the court finds that defendant's offer of a paid medical leave constitutes a "reasonable accommodation" within the meaning of the ADA. See Humphrey, 239 F.3d at 1135–36; Nunes, 164 F.3d at 1247.

■ Because plaintiff's Complaint indicates that defendant offered her two accommodations—one of which was "reasonable"—she has failed to state a claim that defendant's denial of her preferred accommodations constitutes an "adverse employment action" within the meaning of the ADA. See Zivkovic, 302 F.3d at 1089.

To the extent plaintiff might argue that her disability leave, which involves a 30% pay cut, is nevertheless itself an "adverse employment action," district courts in this circuit and several courts outside of this circuit have held that "a reasonable accommodation cannot be a materially adverse employment action." West v. New Mexico

---

**2.** Defendant cites three district court cases and a California appellate court case that held otherwise: (1) LaResca v. Am. Tel. & Tel., 161 F.Supp.2d 323 (D. N.J. 2001); (2) Salmon v. Dade Cty. Sch. Bd., 4 F.Supp.2d 1157 (S.D. Fla. 1998); (3) Schneider v. Cont'l Cas. Co., No. 95 C 1820, 1996 WL 944721 (N.D. Ill. Dec. 16, 1996); and (4) Gonzalez–Malik v. Superior Court of California, Cty. of San Francisco, No. A117113, 2008 WL 4329416 (Cal. Ct. App. Sept. 23, 2008). None of those cases, however, supersede Ninth Circuit precedent.

Defendant also argues that Humphrey is distinguishable because the plaintiff in Humphrey "attempted to try her employer's initial accommodation" before concluding it was ineffective. (Def.'s Mot. at 14.) That argument fails, however, because plaintiff has alleged that she tried to commute to Roseville several times before concluding that the commute was not feasible. (See FAC ¶¶ 22, 28.)

Taxation & Revenue Dep't, 757 F.Supp.2d 1065, 1121 (D. N.M. 2010); see also Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1283 (7th Cir. 1996) ("A reasonable accommodation . . . should not be construed as an adverse employment action."); Selenke v. Med. Imaging of Colorado, 248 F.3d 1249, 1265 (10th Cir. 2001) (where plaintiff alleges ADA discrimination and reasonable accommodation claims, the analyses for the two merge); Capote v. CSK Auto, Inc., No. 12-CV-02958 JST, 2014 WL 1614340, at *7 (N.D. Cal. Apr. 22, 2014) (same); Lafever v. Acosta, Inc., No. C10-01782 BZ, 2011 WL 1935888, at *4–5 (N.D. Cal. May 20, 2011) (same).

While the Ninth Circuit does not appear to have addressed the question, the court finds the reasoning of the above-cited cases to be instructive. Defendant already went beyond what is required under the ADA when it placed plaintiff on paid disability leave. See Nunes, 164 F.3d at 1247; Dark, 451 F.3d at 1090. Defendant's provision of a "reasonable accommodation" in this case, while not the accommodation plaintiff wanted, should not be construed to be an "adverse employment action."

Because plaintiff has failed to allege that defendant carried out an "adverse employment action" against her, she has failed to state a plausible claim of disability discrimination under the ADA. Some courts have held that plaintiffs may also establish disability discrimination "by presenting evidence of disparate treatment." See, e.g., Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001). Plaintiff appears to raise a disparate impact argument in her Opposition, noting that "many other [Hewlett–Packard] employees . . . are permitted to work from home." (Pl.'s Opp'n at 5 (Docket No. 7).) Defendant correctly notes, however, that plaintiff did not allege in her Complaint that she was "treated differently than other similarly situated individuals." (Def.'s Mot. at 17.)

Having determined that defendant's offer of paid disability leave is a "reasonable accommodation" under the ADA, the court also finds that plaintiff has failed to state a plausible claim of failure to provide reasonable accommodation under the ADA. Accordingly, the court will dismiss her first and third causes of action, to the extent they are brought under the ADA.

2. Disability Discrimination and Reasonable Accommodation Under FEHA

Plaintiff cites FEHA as a second statutory basis for her disability discrimination and failure to provide reasonable accommodation claims. (See FAC at 10–11.) FEHA, similar to the ADA, prohibits employers from discriminating against employees "because of . . . [a] physical disability [or] mental disability." Cal. Gov. Code § 12940(a). "Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions." Humphrey, 239 F.3d at 1133 n.6. Indeed, courts have often "analyze[d] . . . [FEHA] and federal disability claims together, relying on federal authority in the absence of contrary or differing state law." Id.

FEHA, like the ADA, requires a plaintiff to plausibly allege the following in order to state a prima facie claim of disability discrimination: "(1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability." Jensen v. Wells Fargo Bank, 85 Cal.App.4th 245, 254, 102 Cal. Rptr.2d 55 (2d Dist. 2000). The court is satisfied that its findings with respect to prongs (1) and (2) in the above ADA analysis resolve the same questions under FEHA. See Diaz, 373 F.Supp.2d at 1054

(noting that "FEHA defines 'disability' more broadly than does the ADA"); Bates v. United Parcel Serv., Inc., 511 F.3d 974, 999 (9th Cir. 2007) (applying "qualified individual" analysis under ADA to same inquiry under FEHA). The court is also satisfied that its findings with respect to the reasonableness of the two accommodations defendant offered plaintiff in the above ADA analysis resolve the same questions under FEHA. See Nadaf–Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App.4th 952, 973, 83 Cal.Rptr.3d 190 (1st Dist. 2008) (noting that FEHA's definition of "reasonable accommodation" "is virtually identical to the ADA's statutory definition of the term"); Humphrey, 239 F.3d at 1133 (applying "reasonable accommodation" analysis under ADA to same inquiry under FEHA).

■ Unlike the ADA, however, FEHA does not provide employers complete autonomy in choosing which reasonable accommodation, when there are more than one, to offer an employee. Section 11068(c) of title 2 of the California Code of Regulations ("section 11068(c)"), which implements FEHA's "reasonable accommodation" provision, states: "When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence." Cal. Code Regs. tit. 2, § 11068(c); see also Wallace v. Cty. of Stanislaus, 245 Cal. App.4th 109, 134, 199 Cal.Rptr.3d 462 (5th Dist. 2016) (applying section 11068(c) in FEHA case). Pursuant to this regulation, an employer's decision to place an employee on leave when she is able to work with another reasonable accommodation "cannot be described as a lawful accommodation of a physical disability." Wallace,

245 Cal.App.4th at 134, 199 Cal.Rptr.3d 462.

Here, defendant placed [3] plaintiff on medical leave despite her asking to be allowed to work from home or at defendant's Folsom office. (FAC ¶¶ 30, 37, 45.) If either accommodation requested by plaintiff is a "reasonable" within the meaning of FEHA, defendant will have failed to comply with section 11068(c).

■ Under FEHA, a "reasonable accommodation is a modification or adjustment to the work environment that enables the employee to perform the essential functions of the job ... she holds." Canupp v. Children's Receiving Home of Sacramento, 181 F.Supp.3d 767, 776 (E.D. Cal. 2016).

Based on the facts alleged in plaintiff's Complaint, either accommodation proposed by plaintiff—work from home or work at Folsom—appears to be "reasonable": plaintiff alleges that when at home, she is able to work on her bed, "propped up with pillows, and conduct business with a laptop" without "miss[ing] a beat," and if allowed to work at Folsom, she would be able to perform her job as usual so long as she could lie down in the conference room when she needs to. (See FAC ¶¶ 27, 37, 42.) Neither accommodation would appear to pose an undue burden to defendant, as plaintiff's position appears to involve work that is primarily done on a "virtual basis," via "Skype, e-mail and collaborative software," (id. ¶ 16; see also id. ¶ 25 (noting that plaintiff's manager "works from his home[,] near Chicago")), and thus not dependent on where she works. Moreover, defendant has allegedly allowed Plaintiff to work from home on and off since 2011. (Id. ¶ 14).

---

**3.** Though the Complaint does not specify, it appears that defendant offered and plaintiff accepted disability leave as a last resort after the parties were unable to agree upon a work accommodation. (See Def.'s Reply at 9 (Docket No. 8); FAC ¶ 45.)

■ The court concludes that plaintiff has plausibly alleged that either of the accommodations she requested would constitute a "reasonable accommodation" under FEHA. Because defendant denied her both accommodations and left her with only one other "reasonable" alternative— going on medical leave—it has, under the facts alleged, failed to comply with section 11068(c). This failure is sufficient for the court to deny defendant's Motion to dismiss plaintiff's third cause of action to the extent it is brought under FEHA.[4] It is also sufficient for the court to deny defendant's Motion to dismiss plaintiff's first cause of action to the extent it is brought under FEHA, as failure to comply with section 11068(c) constitutes "adverse employment action" when it leads to loss of income. See Wallace, 245 Cal.App.4th at 134–37, 199 Cal.Rptr.3d 462 (granting judgment for plaintiff on FEHA disability discrimination claim where adverse action alleged was placement on unpaid disability leave in violation of section 11068(c)).

### B. Failure to Engage in an Interactive Process

Plaintiff's second cause of action alleges that defendant "failed to engage [in] a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations for Plaintiff's . . . disabilities." (FAC ¶ 54.) The claim is brought under both the ADA and FEHA.

■ "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA [and FEHA] to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." Humphrey, 239 F.3d at 1137. "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." Id. "Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." Id. at 1137–38.

■ Plaintiff's "interactive process" claim fails under the ADA because she has not alleged that defendant failed to provide her a reasonable accommodation under the ADA. See Rehling v. City of Chicago, 207 F.3d 1009, 1016 (7th Cir. 2000) (holding that there is no stand-alone claim for "failure to engage in an interactive process" under the ADA; plaintiff must also allege that defendant failed to provide a reasonable accommodation); Wilson v. Dollar Gen. Corp., 717 F.3d 337, 347 (4th Cir. 2013) (same); Lowe v. Indep. Sch. Dist. No. 1 of Logan Cty., 363 Fed.Appx. 548, 552 (10th Cir. 2010) (same).

■ To the extent she brings the same claim under FEHA, however, her claim is not dismissible on the same grounds because she has plausibly alleged that defendant failed to provide her a lawful accom-

---

4. Plaintiff's third cause of action is styled as a reasonable accommodation claim. (FAC at 11.) While failure to comply with section 11068(c) is not technically failure to provide reasonable accommodation, the court construes plaintiff's third cause of action, which argues that defendant should have allowed plaintiff to continue working as opposed to forcing her to go on leave, to encompass a claim brought pursuant to section 11068(c). See White v. WMC Mortg. Corp., No. CIV. A. 01-1427, 2001 WL 1175121, at *1 (E.D. Pa. July 31, 2001) ("A plaintiff's complaint need not cite the correct statute in order to survive a motion to dismiss."). Because the court reads plaintiff's third cause of action to encompass a claim brought pursuant to section 11068(c), and because plaintiff has alleged facts sufficient to state a claim under section 11068(c), the court will not dismiss plaintiff's third cause of action.

modation under FEHA. See Cal. Code Regs. tit. 2, § 11068(c).

Defendant nevertheless contends that it did not fail to satisfy its obligation to interact with plaintiff under FEHA because it responded to her requests to work from home or at Folsom with emails that stated along the lines of the following: "We have reviewed [your] work restrictions and have concluded that we can accommodate these restrictions in the [Roseville] office." (Def.'s Mot. at 12 (quoting FAC ¶ 34); see also FAC ¶ 40 ("The note from your doctor does not identify any work restrictions because travel is not an essential function of your role and as a result, is not something the Company is required to accommodate.").) Plaintiff contends that such responses are without "a modicum of explanation or interactive discussion," and thus lacking in "good faith" and deficient under FEHA. (Pl.'s Opp'n at 8, 14 (Docket No. 7).)

It is for the trier of fact to determine whether defendant's responses to plaintiff were sufficiently "interactive" under FEHA. The court will accordingly decline to dismiss plaintiff's second claim to the extent it is brought under FEHA. See Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 45 (1st Cir. 2013) ("It is not for the court to decide, at the pleading stage ... the meaning of documents that are subject to divergent reasonable interpretations." (quoting Monsanto Co. v. Spray–Rite Serv. Corp., 465 U.S. 752, 766 n.11, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984))).

### C. Failure to Prevent Discrimination and Harassment

■ Plaintiff's fourth cause of action alleges that defendant "failed to take all reasonable steps to prevent ... harassment, discrimination or retaliation" in violation of FEHA. (FAC at 12.) The statute she cites in support of that claim, section 12940(k) · of the California Government Code, provides that "[i]t · is an unlawful employment practice ... [f]or an employer ... to fail to take all reasonable steps necessary · to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "Retaliation is included within the meaning of 'discrimination' for purposes of § 12940(k)." Rubadeau v. M.A. Mortenson Co., No. 1:13-CV-339 AWI JLT, 2013 WL 3356883, at *13 (E.D. Cal. July 3, 2013).

■ "A plaintiff seeking to recover on a failure to prevent discrimination claim under FEHA must show that (1) [she] was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm." Achal v. Gate Gourmet, Inc., 114 F.Supp.3d 781, 804 (N.D. Cal. 2015). Courts have interpreted "a failure to prevent discrimination claim [to be] essentially derivative of a [FEHA] discrimination claim." Id. (citing Trujillo v. N. Cty. Transit Dist., 63 Cal.App.4th 280, 289, 73 Cal. Rptr.2d 596 (4th Dist. 1998)); see also Rux v. Starbucks Corp., No. 2:05-CV-02299 MCE EFB, 2007 WL 1470134, at *9 (E.D. Cal. May 18, 2007) (denying defendant summary judgment on failure to prevent discrimination claim "[g]iven that" plaintiff's FEHA discrimination claim survived summary judgment); Juell v. Forest Pharm., Inc., 456 F.Supp.2d 1141, 1160 (E.D. Cal. 2006) (Damrell, J.) (same).

■ As discussed above, plaintiff has sufficiently alleged that defendant discriminated against her in violation of FEHA by placing her on disability leave instead of granting her a reasonable accommodation that would allow her to work. This alleged violation caused plaintiff economic loss by requiring her to take a 30% pay cut while on leave. Because plaintiff's FEHA disability discrimination claim survives defen-

dant's motion to dismiss, her failure to prevent discrimination claim survives the motion as well. See Achal, 114 F.Supp.3d at 804; Rux, 2007 WL 1470134, at *9; Juell, 456 F.Supp.2d at 1160.

### D. Age Discrimination

██ Plaintiff's fifth cause of action alleges that defendant discriminated against her based on her age in violation of FEHA, Cal. Gov. Code § 12940(a). (FAC at 13.) "In order to make out a prima facie case of age discrimination under FEHA, a plaintiff must present evidence that the plaintiff (1) is over the age of 40; (2) suffered an adverse employment action; (3) was performing satisfactorily at the time of the adverse action; and (4) suffered the adverse action under circumstances that give rise to an inference of unlawful discrimination, i.e., evidence that the plaintiff was replaced by someone significantly younger than the plaintiff." Sandell v. Taylor–Listug, Inc., 188 Cal.App.4th 297, 321, 115 Cal.Rptr.3d 453 (4th Dist. 2010).

██ Plaintiff, who is fifty-four, (see FAC ¶ 12), has not alleged facts giving rise to a plausible inference of age discrimination. Even assuming that plaintiff's being placed on disability leave with 70% pay qualifies as an "adverse employment action" for purposes of a FEHA age discrimination claim, there are no facts indicating that defendant's decision to place her on leave was because of her age. Plaintiff does not allege that she has been replaced by a younger employee, that she overheard any negative comments about her age, or that age was ever a point of discussion at any time during her communications with defendant about an accommodation for her back problems. Plaintiff's counsel stated at oral argument that plaintiff's boss, who she alleges is allowed to work from home, is younger than plaintiff.

That fact, however, is not alleged in the Complaint.

Plaintiff does allege that defendant's CEO, Meg Whitman, issued a company-wide memo stating that the company should "amp[ ] up ... college hiring" and "return to a labor pyramid that really looks like a triangle where you have a lot of early career people" before she was placed on leave. (Id. ¶ 71.) At worst, the memo suggests that defendant may seek to hire more young applicants at the expense of older ones. Plaintiff is not a job applicant, and there is no suggestion in the memo, as alleged in plaintiff's Complaint, that defendant was seeking to get rid of current employees who are not young.

Because plaintiff has not alleged facts that plausibly suggest she was placed on disability leave because of age discrimination, she has failed to state a plausible claim of age discrimination under FEHA.

### E. Intentional Infliction of Emotional Distress

██ Plaintiff's sixth and final cause of action alleges that defendant intentionally inflicted emotional distress upon her during the course of its interactions with her concerning her medical condition. (Id. at 13.) Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Hughes v. Pair, 46 Cal.4th 1035, 1050, 95 Cal. Rptr.3d 636, 209 P.3d 963 (2009).

Plaintiff states, in her Opposition, that an email from one of her supervisors rejecting her request to work at Folsom was

particularly "brusque," (Pl.'s Opp'n at 7), and that she was "shocked by [its] threatening tone," (FAC ¶ 41). The email states, in relevant part:

> The note from your doctor does not identify any work restrictions because travel is not an essential function of your role and as a result, is not something the Company is required to accommodate ..... Please be advised that you are expected to return to the office immediately. Failure to do so may result in disciplinary action.

(Id. ¶ 40.) This email, according to plaintiff, required her "to choose between 1) ignoring her treating doctor's strict instructions and risking permanent damage to her back and spine by commuting to Roseville, or 2) incur[ing] 'disciplinary action' that could result in her getting fired from her job." (Id. ¶ 41.) Plaintiff alleges that the email, "the refusal of [defendant] to engage in good faith dialogue," defendant's decision to place her on leave and cut her pay, and "uncertainty about her job" resulting from defendant's conduct were all "substantial factor[s] in causing [her] severe emotional distress." (Id. ¶ 77; Pl.'s Opp'n at 17.)

Again, it will be for the trier of fact to determine whether defendant's treatment of plaintiff rose to the level of "extreme and outrageous" conduct. The court will accordingly decline to dismiss plaintiff's sixth claim at this time. See Evergreen, 720 F.3d at 45.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss plaintiff's Complaint be, and the same hereby is, GRANTED IN PART and DENIED IN PART, as follows:

The following causes of action alleged by plaintiff are DISMISSED WITHOUT PREJUDICE: (1) disability discrimination in violation of the ADA, 42 U.S.C. §§ 12101 et seq.; (2) failure to engage in an interactive process in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A); (3) failure to provide reasonable accommodation in violation of the ADA, 42 U.S.C. § 12112(b)(5)(A); and (4) age discrimination in violation of FEHA, Cal. Gov. Code § 12940(a).

Defendant's Motion to dismiss the following causes of action is DENIED: (1) disability discrimination in violation of FEHA, Cal. Gov. Code § 12940; (2) failure to engage in an interactive process in violation of FEHA, Cal. Gov. Code § 12940(n); (3) failure to provide reasonable accommodation in violation of FEHA, Cal. Gov. Code § 12940(m); (4) failure to prevent discrimination and harassment in violation of FEHA, Cal. Gov. Code § 12940(k); and (5) intentional infliction of emotional distress.

Plaintiff has twenty days from the date this Order is signed to file an amended complaint, if she can do so consistent with this Order.